Filed 5/17/21  In re Samantha H. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SAMANTHA H. et al., Persons Coming Under the Juvenile Court Law. | B307024 (Los Angeles County Super. Ct. No. 20CCJP02724A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JUSTINE H., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Emma Castro, Juvenile Court Referee.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Justine H., the mother of eight-year-old Samantha H. and seven-year-old Clark H., appeals the juvenile court's jurisdiction findings sustaining in part the amended petition filed by the Los Angeles County Department of Children and Family Services (Department) pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) and (c),[1] alleging she has mental and emotional problems and a history of substance abuse that interfere with her ability to provide regular care for the children, and the court's orders removing the children from her custody, placing them with their father, Ryan H., and terminating jurisdiction with a juvenile custody order that awarded Ryan sole physical and legal custody and limited Justine to monitored visitation. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2020 the family court in a still-pending case issued a temporary order awarding joint physical and legal custody of Samantha and Clark to Justine and Ryan. Ryan also shares custody of his 17-year-old daughter, R.H., with his former wife, Racquel P.

_____

[1]     Statutory references are to this code.

1. *The Referral and Initial Investigation*

On April 13, 2020 the Department received a report of possible general and physical abuse of Samantha and Clark. The information, although reported by a third party, came from Justine, who had alleged Kimberly W., Ryan's girlfriend and the children's occasional babysitter, had forced Samantha to shower with her, asked her inappropriate questions about Justine and grabbed and squeezed Clark's penis, causing it to bleed. According to Justine, both children reported being hit by Kimberly; they were now nervous about returning to Ryan's home.

Interviewed by one of the Department's social workers, Justine repeated the allegations regarding Kimberly and told the social worker she and Ryan had separated a year earlier due to Ryan's anger issues. Several days later Justine reported Ryan was trying to hack into her cell phone, a concern she repeated in a subsequent interview.

Clark told the social worker Kimberly was mean and disciplined him by hitting his arms and legs. Clark also said he had complained about Kimberly to Ryan, but Ryan did not believe him. Interviewed a second time, Clark repeated his statement that Kimberly hit him and squeezed his penis. Justine refused to take Clark for a forensic medical examination.

For her part, Samantha said she had not seen Kimberly hit or spank Clark. She had showered with Kimberly on one occasion, which made Samantha uncomfortable; but Kimberly had not touched her private parts.

When he was interviewed several days later, Ryan said the children had never complained of abuse by Kimberly and he did not believe the alleged misconduct had occurred. Ryan thought

Justine was coaching the children and explained she had falsely accused him of domestic violence in connection with their family law case. Ryan said Kimberly had ended her relationship with him and had not been to his home following Justine's accusation of abuse.

During its investigation the Department inquired about Justine's drug arrest in April 2019. According to the report from the Pasadena Police Department, officers responded to a motel for a mental health evaluation of Justine. Justine told the officers she was being stalked, a friend had attempted to drug her with gamma-hydroxybutyrate (GHB) and her cell phone was being hacked. Justine produced a bag and said a friend had planted drugs in it. The officers observed a white crystal substance that resembled methamphetamine. Justine appeared to the officers to be exhibiting drug-induced paranoid delusions. She was arrested for possession of a controlled substance. A post-arrest search of Justine's belongings uncovered a glass pipe with a burnt substance inside it. Justine claimed this had been planted, as well. The criminal charges were eventually dismissed. When asked about these events, Justine's response to the social worker was that she did not abuse drugs and had been in the wrong place at the wrong time.

The Department also interviewed the principal at Samantha and Clark's elementary school, who described bizarre behavior by Justine over the past year, including aggressive and argumentative interactions with school personnel, odd driving in the school parking lot while appearing to be intoxicated and false claims that Kimberly had come to the school impersonating Justine. Because of Justine's repeated claims about her

4

electronics, including email, being hacked, teachers were unable to get school assignments to Samantha and Clark.

Justine's physician reported she was seeing an addiction specialist, who had prescribed medication for Justine used to treat opioid addiction. The physician stated Justine had a history of becoming delusional as a result of her insomnia and had been hospitalized for her insomnia and psychotic behavior. He had prescribed various medications for her insomnia. The physician had witnessed Justine having a panic attack in March 2020 while he was talking to her. Her conduct prompted him to request that law enforcement conduct a welfare check. The prior year, apparently following the motel episode and based on her insistence she had been drugged with GHB, the physician had Justine tested on April 25, 2019, April 29, 2019 and May 10, 2019. All three tests were negative for GHB.

2. *The Dependency Petition and First Amended Petition*

The children were detained from Justine via a protective custody warrant on May 14, 2020 and placed with Ryan. On May 18, 2020 the Department filed a section 300 petition, alleging Justine had created a detrimental and endangering home environment (under section 300, subdivision (b)(1)) and emotionally abused the children (under section 300, subdivision (c)) by involving them in her ongoing custody dispute with Ryan. Specifically, the petition alleged Justine had coached the children to make accusations, including of sexual and physical abuse, against Ryan's female companion. In a separate count under section 300, subdivision (b)(1), the petition alleged Justine's mental and emotional problems rendered her incapable of providing regular care for the children. This count also alleged Ryan was aware of Justine's problems and failed to protect the

children by allowing them to reside in Justine's home and to have unlimited access to her.

At the detention hearing on May 21, 2020 the court found Ryan to be the presumed father of both children, detained them from Justine and ordered them released to Ryan's home.

A first amended petition filed July 16, 2020 added a second section 300, subdivision (b)(1), count, alleging Justine had a history of illicit drug abuse that rendered her incapable of providing regular care of the children. The additional count alleged that in early 2012 Justine, a registered nurse, had enrolled in the Board of Registered Nursing's diversion program. In June 2014 she was disciplined for obtaining controlled substances. On July 2, 2015 she entered into a stipulated settlement stating she had used controlled substances or dangerous drugs in a manner that was deemed dangerous to herself and the public. Effective February 11, 2016 the Board revoked Justine's registered nursing license due to noncompliance with the requirements of the diversion program. The new subdivision (b)(1) count, like the earlier one, alleged Ryan was aware of Justine's problems and failed to protect the children by allowing them to reside in Justine's home and to have unlimited access to her.

3. *The Jurisdiction/Disposition Report and Hearing*

Justine was interviewed once again for the Department's jurisdiction/disposition report. She denied having any substance abuse issues, explaining she only took sleeping pills. She repeated her claims the methamphetamine found in April 2019 had been planted, suggesting it was Ryan who was responsible, and accused Ryan of hacking into her electronic accounts. She described the diversion program as directed to her sleeping

6

problems, not substance abuse, and minimized her participation in two other recovery programs. Justine reiterated the children's claims of abuse by Kimberly.

Ryan in a follow-up interview said he had helped Justine enter four different drug rehabilitation programs in 2017 and 2018 due to her reliance on prescription medication and described Justine's two-month disappearance in 2019, during which she sent him numerous text messages about being held hostage and people hacking into her cell phone.

The report attached documents that confirmed the amended petition's allegations regarding revocation of Justine's registered nursing license and the substance abuse issues that preceded it.

Last minute information reports to the court indicated that Justine had negative drug tests on June 3, 2020 and July 6, 2020. She failed to appear for a scheduled test on June 30, 2020. No explanation for missing the test was provided. Ryan had negative tests on July 1 and July 6, 2020. His July 1, 2020 test was "diluted" because he drank excessive amounts of water. The report stated the testing facility does not determine whether that was done by the subject in an effort to flush something out of his or her body or because the subject was having difficulty urinating.

At the combined jurisdiction/disposition hearing Clark testified Kimberly was mean to him and hit both Samantha and him. He said Kimberly had touched him on his private parts while he was in the bathroom and she was not trying to help him because he could go by himself. Clark also insisted his statements were true and he had not been told by anyone to say them. Samantha also testified and stated no one told her what to

say. She said Kimberly spanked her brother and her and yelled at her.

During argument the Department asked the court to sustain the amended petition as pleaded. Justine's counsel asked that the petition be dismissed or, in the alternative, the children be released to her. Ryan's counsel asked that he be designated a nonoffending parent. The children's counsel asked the court to sustain the petition but to dismiss the allegations concerning Justine's involvement of the children in the parents' custody dispute.

The juvenile court found by a preponderance of the evidence that Justine was suffering mental and emotional problems, "demonstrat[ing] delusional, paranoid and psychotic behavior." It also found Justine continued to have a substance abuse problem and indicated its opinion that she needed a dual diagnosis substance abuse program. The court emphasized that it found very troubling Justine's false accusations that Kimberly was trying to impersonate her and that Ryan was hacking into her electronics and the absence of any evidence that Justine was making any effort to address these problems. The court struck the allegations concerning Ryan from the petition, noting he and Justine had separated more than 18 months earlier and he had tried through the family court to maintain full custody of the children.[2] The court dismissed the subdivisions (b)(1) and (c) counts alleging Justine's involvement of the children in the

---

[2] The court slightly amended (by interlineation) the language in the sustained allegation regarding Justine's mental and emotional problems, so it states those problems interfere with Justine's ability to provide regular care for the children, rather than rendering her incapable of providing such care.

8

parents' custody dispute caused the children harm or created a substantial risk of harm.

Turning to disposition, the court noted that Justine and Ryan's family law case would continue after the court terminated its jurisdiction. The court declared the children dependents of the court. Pursuant to section 361, subdivision (c), and based on the evidence it had discussed when it sustained the petition, the court found by clear and convincing evidence that a substantial danger exists as to both children if returned to Justine's custody. The court further found reasonable efforts had been made to prevent the need for removal. The court ordered the children removed from Justine and placed with Ryan. The court determined Ryan had no need for, and would not benefit from, services. Accordingly, the court terminated its jurisdiction with a juvenile custody order granting sole physical and legal custody to Ryan with Justine to have monitored visitation.

Justine filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

9

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re J.N.* (2021) 62 Cal.App.5th 767, 774; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that

10

the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In Kadence P.*, at p. 1384.)

Before the court may order a child removed from the physical custody of a parent with whom the child was residing at the time the dependency proceedings were initiated, it must find by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c); *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.V.*, at pp. 135-136.)

2. *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a

11

reasonable trier of fact could find that the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

In evaluating the propriety of a disposition order removing a child from a parent or guardian pursuant to section 361, in view of the requirement the juvenile court make the requisite findings based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 (*O.B.*)); see *In re V.L.* (2020) 54 Cal.App.5th 147, 155 [*O.B.* is controlling in dependency cases].)

> 3. *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Subdivision (b)(1)*

Justine contends the evidence before the court was insufficient to support its findings she had mental and emotional problems and was currently abusing drugs and, in any event, the Department failed to prove her conduct created a significant risk of harm to Samantha and Clark. As discussed, after hearing the evidence and apparently resolving credibility issues against Justine, the court concluded her mental health and illicit drug issues were interrelated and were the cause of delusional and problematic behavior that could endanger the children. The record adequately supports that ruling.

Viewed in the light most favorable to the court's findings, the evidence of Justine's mental health and emotional problems was strong: Over a period of years she exhibited paranoid delusions, repeatedly complaining of being stalked or held hostage, having her electronic devices and email hacked (by Ryan, Kimberly or others) and being drugged. In addition, the

court determined most, if not all, of her accusations against Kimberly were false, including the charges of physical and sexual abuse and Justine's insistence that Kimberly had attempted to impersonate her at the children's school. Yet the children were apparently induced to believe her claims, repeating at least some of them when they spoke to the Department's investigators and disrupting their relationship with Ryan. Justine's concern about the security of her email accounts also interfered with the children's teachers' ability to communicate with the children, including sending them homework assignments.

Although the evidence of Justine's current, continued drug abuse was arguably less strong, the court reasonably inferred from her behavior over the years, as well as her denial of any significant problems other than insomnia notwithstanding the loss of her nursing license because of prescription drug abuse and her arrest in April 2019 for possession of a controlled substance, the danger of relapse without treatment was significant. (Cf. *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"]; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"].) Because Clark was only six years old at the time of the jurisdiction hearing—that is, he was a child of "tender years"— the court's substance abuse finding was also sufficient to establish harm to the child. (See *In re Christopher R., supra*, 225 Cal.App.4th at p. 1219 [with respect to a child of tender years, "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care

13

resulting in a substantial risk of harm'"]; accord, *In re Kadence P., supra,* 241 Cal.App.4th at p. 1385.)

4. *Substantial Evidence Supports the Removal Order*

The evidence supporting the juvenile court's jurisdiction findings also supported the children's removal from Justine's custody. Justine's untreated mental health and substance abuse issues created a significant risk of harm for her young children.

Justine contends reasonable means existed to protect the children without removal from her home, including therapy and a drug treatment and testing program. In fact, as part of its juvenile custody orders, the court ordered Justine to participate in a dual diagnosis drug and mental health treatment program and individual counseling with a licensed or supervised therapist and to comply with any direction she take psychotropic medication.[3] As indicated in the custody orders, Justine's completion of these programs might constitute a significant change of circumstances for purposes of modifying the custody order in family court. (See § 302, subd. (d).) But at the time the court terminated its jurisdiction, far from making any effort to address her problems, Justine continued to deny they existed. Simply ordering her to start treatment in that context would not ensure Samantha and Clark's safety.

---

[3] We augment the record on our own motion to include the juvenile custody orders, filed July 20, 2020. (Cal. Rules of Court, rules 8.155(a)(1)(A), 8.410(b)(1).)

## DISPOSITION

The jurisdiction findings and disposition orders are affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.