Filed 2/14/22  In re Loyalty J. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re LOYALTY J., a Person Coming Under the Juvenile Court Law. | B312288 |
| | (Los Angeles County Super. Ct. No. 20CCJP06773A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| AYANNA K., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Ayanna K., the mother of now-two-year-old Loyalty J., appeals the juvenile court's jurisdiction findings and disposition order declaring Loyalty a dependent child of the court after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b)(1).[1]  Ayanna contends the court's jurisdiction findings and disposition order were not supported by substantial evidence and the court abused its discretion by limiting her to monitored visitation.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition*

In late November 2020 the Los Angeles County Department of Children and Family Services (Department) received a report Ayanna had been stopped at a sobriety checkpoint and arrested for driving under the influence of marijuana while Loyalty was in the car.  At the time of the arrest Ayanna also had a large open Mason jar three-quarters full of marijuana in the glove compartment.  According to the arresting officer Ayanna had watery, droopy eyes and the car smelled of marijuana.  Ayanna and Loyalty were the only occupants of the car.

On December 2, 2020 a Department social worker interviewed Ayanna and observed her with Loyalty.  The social

---

[1]  Statutory references are to this code unless otherwise stated.

2

worker found Loyalty to be healthy, but she was not current on medical appointments or immunizations.

Ayanna claimed she did not know why she had been stopped at the checkpoint and said she had not been driving erratically. However, she admitted she had smoked a marijuana cigarette one hour prior to arriving at the checkpoint and had a jar of marijuana in the car. Ayanna said another adult had been with her in the car when she was arrested, but she refused to give the person's name.

Ayanna stated she smoked marijuana recreationally once or twice per week. She denied smoking in Loyalty's presence, explaining she smoked in the car while Loyalty was inside the home sleeping. Ayanna told the social worker she did not know her current home address because she was receiving housing assistance and had been at her current residence only a few weeks and could not provide contact information for Loyalty's father, Yeshua J., whom she only contacted through social media. Ayanna said she was no longer in a relationship with Yeshua but he had weekly visits with Loyalty.

Ayanna agreed to an on-demand drug test the day of her interview. She tested positive for marijuana at high levels.

In an interview with a Department social worker on December 22, 2020, Yeshua said he was concerned for Loyalty's health and safety and had been planning to seek custody. He explained he did not think Ayanna fed Loyalty enough and did not clean up after her. Ayanna had not allowed Yeshua to see Loyalty for eight months, and Yeshua had not been able to contact Ayanna because she did not have permanent housing. Yeshua expressed concern that Ayanna chose to be homeless rather than live with him or her family.

Yeshua acknowledged smoking marijuana with Ayanna when they were in a relationship. He denied smoking in Loyalty's presence, but he claimed to have seen Ayanna smoke marijuana in the car while Loyalty was with her. Ayanna had told Yeshua she sold marijuana out of the car while Loyalty was with her.

Ayanna's mother and brother told the social worker Ayanna was a good mother and they did not have any concerns regarding her marijuana use.

On December 28, 2020 the Department filed a two-count petition pursuant to section 300, subdivision (b). In the first count the Department alleged Ayanna placed Loyalty in a detrimental and endangering situation by driving under the influence of marijuana while Loyalty was in the car. The second count alleged Ayanna had a history of substance abuse and was a current abuser of marijuana, which interfered with her regular care and supervision of Loyalty.

At the December 31, 2020 detention hearing the court found a prima facie case for detaining Loyalty and placed her with Yeshua. The Department was ordered to provide services to Ayanna, including referrals for drug treatment, drug testing and individual counseling. The court specifically told Ayanna a missed drug test would be considered a positive test, and Ayanna stated she understood. The court ordered monitored visitation for Ayanna three times per week. The court also ordered visitation could become unmonitored once Ayanna had achieved six consecutive negative drug tests.

2. *The Jurisdiction/Disposition Report*

The Department filed a jurisdiction/disposition report on February 11, 2021. The report contained a summary of an

4

interview conducted with Ayanna on January 25, 2021. Ayanna again admitted she had smoked a marijuana cigarette prior to driving the car on the night of her arrest, but now stated she had done so two hours prior to being arrested. She said she "got caught up" at the checkpoint and was "a little high." Ayanna denied smoking marijuana while caring for Loyalty or driving with her when under the influence of marijuana. She said she only smoked when the baby was asleep. When the social worker noted the contradiction between Ayanna's statement she did not care for Loyalty when under the influence and her admission she was "a little high" on the night of her arrest while Loyalty was in her care, Ayanna answered, "Yeah." The social worker then asked Ayanna if she felt it was inappropriate to drive while intoxicated with Loyalty in the car, to which Ayanna replied she understood it was wrong but got "caught up."

Ayanna told the social worker she had been using marijuana since she was 16 years old. She used it several times a week but claimed she could stop anytime. Ayanna knew she could have unmonitored visitation with Loyalty after six negative drug tests; however, she said she wanted to use marijuana to celebrate her 21st birthday later that week. She planned to stop using after that. Ayanna missed a drug test on January 21, 2021. As of mid-February Ayanna had not yet enrolled in a drug treatment program or begun individual counseling.

The social worker also interviewed Yeshua in late January 2021. Yeshua said he had often seen Ayanna smoke five to six marijuana cigarettes a day until she was too intoxicated to function. On one occasion he witnessed Ayanna driving with Loyalty in the car while Ayanna appeared under the influence of alcohol and had an open alcohol container with her.

Ayanna's car often smelled of marijuana, and Yeshua believed Ayanna smoked marijuana in Loyalty's presence.

According to the Department social worker, Loyalty appeared to be bonded to Yeshua. She was healthy and developmentally appropriate.

As of late January 2021 Yeshua reported Ayanna's visits with Loyalty had been infrequent and she sometimes stayed only 15 minutes. However, as of mid-February Ayanna had been visiting twice per week for several hours at a time.

The Department recommended the court sustain the petition and close the case with a custody order granting Yeshua sole legal and physical custody. The social worker explained Ayanna had shown little to no remorse for driving under the influence of marijuana and she did not appear to understand the danger of continued marijuana use while caring for Loyalty.

In a last minute information report filed April 2, 2021 the Department stated Ayanna had tested positive for marijuana three times between February 11, 2021 and March 15, 2021, although the levels of marijuana in Ayanna's system had decreased from the high amount in December 2020 and had decreased slightly over the three tests in February and March. Ayanna claimed she had not used marijuana since late January and believed she was still testing positive as a result of being around her friends when they smoked.

3. *The Jurisdiction/Disposition Hearing*

The jurisdiction/disposition hearing was held on April 13, 2021. Ayanna submitted a letter from her substance abuse counselor stating Ayanna had commenced treatment on March 25, 2021 and "is showing commitment to her recovery already." The letter identified "cannabis dependence" as one of

the "specific areas that need improvement" and would be addressed in Ayanna's counseling sessions. Ayanna tested negative for marijuana on April 2, 2021. The Department, Yeshua and Loyalty objected to the letter on timeliness, authentication and hearsay grounds. The juvenile court admitted the letter into evidence, stating it would accord it the appropriate weight.

Proceeding to argument Ayanna's counsel sought to dismiss the petition in its entirety, arguing there was no evidence of substance abuse and the arrest for driving under the influence had been an isolated incident. If the court were to sustain the petition, Ayanna's counsel requested the case remain open and Loyalty be released to her and Yeshua. Loyalty's counsel concurred with the request to dismiss the substance abuse count but argued the court should sustain the allegation regarding driving under the influence. Loyalty's counsel also argued for the case to remain open and for release of Loyalty to both parents.

The juvenile court found by a preponderance of the evidence that the allegations in the petition were true and sustained the petition under section 300, subdivision (b)(1). In explaining its ruling the court stated that Ayanna "is clearly very reliant on marijuana" given that she used it on a regular basis, chose to use marijuana on her birthday rather than work toward gaining unmonitored visitation and had failed to regularly test negative for marijuana.

The court declared Loyalty a dependent of the court and ordered her removed from Ayanna and placed with Yeshua under the supervision of the Department. The Department was ordered to provide reunification services to Ayanna, including substance abuse treatment, drug testing, parenting classes and monitored

7

visitation for a minimum of six hours per week. Visitation could become unmonitored after Ayanna completed six consecutive negative drug tests.[2]

## DISCUSSION

### 1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Cole L.* (2021) 70 Cal.App.5th 591, 601; *In re A.F.* (2016) 3 Cal.App.5th 283, 289.) In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2; see *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise

---

[2] On November 12, 2021, after Ayanna had filed her opening brief, the juvenile court continued the scheduled section 364 review hearing and ordered unmonitored overnight visits for Ayanna. In her reply brief Ayanna stated she "submits" on her appeal of the order for monitored visitation. We take judicial notice of the juvenile court's November 12, 2021 minute order (Evid. Code, §§ 452, subd. (d), 459) and find Ayanna's challenge to the court's prior order of monitored visitation is now moot.

or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re J.N.* (2021) 62 Cal.App.5th 767, 775; *In re Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1215-1216; *In re N.M.*, at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *Kadence P.*, at p. 1384.)

Before the court may order a child removed from the physical custody of a parent with whom the child was residing at the time the dependency proceedings were initiated, it must find

by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal.  (§ 361, subd. (c); *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.)  "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child."  (*In re T.V.*, at pp. 135-136.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  [Citation.]  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'"  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate.  (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

In evaluating the propriety of a disposition order removing a child from a parent or guardian pursuant to section 361, in view of the requirement the juvenile court make the requisite findings based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains

substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; see *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123 ["[i]n reviewing for substantial evidence to support a dispositional order removing a child, we 'keep[] in mind that the [juvenile] court was required to make its order based on the higher standard of clear and convincing evidence'"]; *In re V.L.* (2020) 54 Cal.App.5th 147, 155 [*O.B.* is controlling in dependency cases].)

   2. *Substantial Evidence Supports the Jurisdiction Finding of Substance Abuse*

Ayanna does not deny her past frequent use of marijuana but contends the evidence did not establish substance abuse.[3]

---

[3]      In *In re Drake M.* (2012) 211 Cal.App.4th 754, 766, upon which Ayanna primarily relies, Division Three of this court held, for purposes of section 300, subdivision (b), a finding of substance abuse "must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR." After the decision in *Drake M.* the DSM-IV-TR's definition of "substance abuse" was replaced in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) by a more broadly defined classification of "substance use disorders," which combines substance abuse and dependence. (See *In re Christopher R., supra,* 225 Cal.App.4th at p. 1218, fn. 6.) "DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use;

Ayanna is correct that use of marijuana or alcohol, standing alone, is insufficient to support dependency jurisdiction under section 300, subdivision (b)(1). (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 ["[i]t is undisputed that a parent's use of marijuana '*without more*,' does not bring a minor within the jurisdiction of the dependency court"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 ["it is true that the mere use of marijuana by a parent will not support a finding of risk to minors"].) Here, however, substantial evidence supported the juvenile court's finding Ayanna's marijuana use constituted substance abuse. Ayanna admitted to smoking marijuana regularly over the last five years (her entire adult life), and Yeshua stated Ayanna often smoked so much she could not function. Although Ayanna claimed she never cared for Loyalty while under the influence, that assertion was contradicted by Ayanna's arrest for driving under the influence while Loyalty was in the car and Ayanna's positive drug test in December 2020 on a day she was caring for Loyalty. Ayanna also gave

---

and not managing to do what one should at work, home or school because of substance use. The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder." (*Ibid.*) As we held in *Christopher R.*, "We recognize the *Drake M.* formulation as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b). But it is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept [the] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM-IV-TR [or DSM-5] categories can be found to be a current substance abuser." (*Id.* at p. 1218.)

inconsistent explanations regarding the circumstances of her arrest, first stating she smoked a marijuana cigarette an hour before the arrest, then saying it was two hours earlier. In addition, she initially told a social worker another adult had been in the car with her during the arrest even though she had been alone with Loyalty. Ayanna insisted she had not smoked marijuana since late January, but her three positive tests in February and March 2021 support the inference she was not being truthful about her marijuana use.

Moreover, the evidence in the record established that Ayanna did not comprehend the risks associated with driving while under the influence or caring for her child while intoxicated, nor did she take responsibility for her actions, stating she just "got caught up" at a sobriety checkpoint. Even when under Department scrutiny Ayanna failed to appear for testing, continued to test positive and chose to smoke marijuana on her birthday despite knowing it would delay unmonitored visits with Loyalty. The lack of insight into the effects of her marijuana use and apparent inability to curtail her use reasonably supported a finding of substance abuse.

Ayanna additionally argues there was insufficient evidence to establish her use of marijuana interfered with her ability to properly care for Loyalty. However, Ayanna acknowledges that, with respect to a child of "tender years" like Loyalty, who was under two years old at the time of the jurisdiction hearing, "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'" (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219; accord, *In re Kadence P.*, *supra*, 241 Cal.App.4th at p. 1385.) Ayanna nonetheless contends she

did not put Loyalty at risk of harm because she only smoked when Loyalty was asleep.  Ayanna's claim was contradicted by Yeshua, and the juvenile court's assessment of which parent to believe is not for us to review.  But even if Ayanna's assertion were true, she presented no evidence a sober caregiver was with Loyalty while Ayanna was smoking marijuana outside in her car.  At most Ayanna's defense is that she did not expose Loyalty to second-hand smoke, not that she had ensured her baby was properly supervised.  This evidence was a sufficient link between Ayanna's marijuana abuse and the risk of harm to Loyalty to support the jurisdiction finding.  (See *Kadence P.*, at pp. 1384-1385 [mother's continuous substance abuse and attempts to conceal it placed infant daughter at substantial risk of harm]; *Christopher R.*, at pp. 1219-1220 [father's persistent drug use rendered him incapable of providing regular care for infant child].)[4]

### 3. *Substantial Evidence Supports the Removal Order*

The evidence that Ayanna's substance abuse exposed Loyalty to a substantial risk of serious physical harm supporting the court's jurisdiction finding also supports the court's disposition order.  (See *In re Nathan E., supra,* 61 Cal.App.5th at p. 124 ["[t]his record provides substantial evidence to support both (1) the court's jurisdictional finding by a preponderance of the evidence that, at the time of the jurisdictional hearing, the parents' ongoing domestic violence issues created a substantial

---

[4]     In light of our affirmance of the juvenile court's finding of jurisdiction based on Ayanna's substance abuse, we need not address Ayanna's argument the finding of jurisdiction based on her driving under the influence arrest was improper.  (See *In re Kadence P., supra,* 241 Cal.App.4th at p. 1385, fn. 6.)

risk that the children would suffer physical harm . . . , and (2) the court's finding by clear and convincing evidence that, at the time of the dispositional hearing, returning the children to mother's custody posed a risk of substantial danger to them"].) Nevertheless, Ayanna contends removal was not necessary because she had "fully engaged in voluntary testing and services, and she did so both comprehensively and with great success." Her argument is not supported by the record, which shows Ayanna did not enroll in a substance abuse program until three months after Loyalty had been removed from her care and did not test negative for marijuana until two weeks before the disposition hearing. In addition, despite having regularly used marijuana for six years, Ayanna had been engaged in substance abuse counseling only three weeks at the time of the hearing. In light of this evidence the juvenile court's finding there was no reasonable means to protect Loyalty without removal was proper.

## DISPOSITION

The juvenile court's findings and orders are affirmed.


                                                    PERLUSS, P. J.

We concur:


        SEGAL, J.                        FEUER, J.