Filed 9/2/22  In re M.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.C. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078112 |
| Plaintiff and Respondent, | (Super. Ct. No. RIJ1600617) |
| v. | OPINION |
| A.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Cheryl C. Murphy, Judge. Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham, County Counsel, and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

Lauren K. Johnson, under appointment by the Court of Appeal, for M.C. and J.C.

1

## I.

## INTRODUCTION

A.C. (Father) appeals the juvenile court's jurisdictional and dispositional orders. We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2021, the Riverside County Department of Public Social Services (the Department) filed a Welfare and Institutions Code[1] section 300 petition on behalf of Father's six-year-old child, M.C., and his five-year-old child, J.C. The petition alleged Father and Mother (who is not a party to this appeal) failed to protect M.C. and J.C. (§ 300, subd. (b)(1)).

The petition contained eight specific allegations (b-1 through b-8) concerning Father, Mother, or both of them. The first allegation (b-1) stated that Father failed to appropriately supervise the children, who had to walk to school alone, because Father was asleep. The allegation also said that while Father was asleep, J.C. played on the couch, resulting in her falling and hitting herself on the table, which caused her to sustain marks and bruises to her face. The second allegation (b-2) stated that Father neglected J.C.'s medical needs, J.C. appeared malnourished, and she reported being hungry while in his care. Father also delayed in following up on J.C.'s physician's recommendation to increase J.C.'s calorie intake. The third allegation (b-3) alleged that Father neglected the

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

children's safety in July 2021 in that his home had a "strong smell of marijuana," clutter and dirty laundry in the hallway, and a four-inch knife on the living room table. The fourth allegation (b-4) stated that Father had a history of marijuana and methamphetamine use, and had tested positive for marijuana in July 2021. Allegations b-5, b-6, and b-8 concerned Mother only. Allegation b-7, however, stated that both parents had a history with the Department due to substantiated allegations of general neglect, domestic violence, and substance abuse. The Department later filed an amended petition, but there were no changes to the (b)(1) allegations.

After several continuances, the juvenile court held a contested jurisdictional hearing in November 2021. The Department submitted on its reports and recommendations filed before the hearing. The minors' counsel suggested that additional language and allegations should be added to the petition. Counsel provided the proposed language to the juvenile court and the parties. Father's counsel indicated she was prepared to begin the hearing. After the social worker testified, the juvenile court closed the matter to evidence and continued the hearing for argument.

At the beginning of the continued contested jurisdictional hearing, the minors' counsel stated she intended to argue to amend the allegations in the amended petition to conform to the proof presented. Father's counsel indicated that she was "ready to argue the allegations."

After hearing argument from counsel for Mother, Father, and the minors, the juvenile court found true the allegations in the amended petition as modified. The

3

juvenile court modified the language in allegation b-1 to remove the language about J.C. falling, adding that "various explanations were provided" to explain the "marks and bruises to her face." The court also revised allegation b-5, which stated J.C. "was observed to have five scratches . . . about four inches . . . in length on her chest on or about July 13, 2021. Both parents identified the other parent as the individual who inflicted those scratches."

The juvenile court then added and found true three new (b)(1) allegations. Allegation b-9 stated, "While in the care of the father, the minor, [J.C.], sustained marks and bruises to her face. And the father, stepmother, minor, and minor's sibling provided different explanations for the injuries that occurred on or about June 7, 2021." Allegation b-10 stated, "There is a history of physical discipline in the home of the father, and that the father previously admitted to spanking the minor multiple times on her bare bottom for defecating on herself. In the 2019 [Child Abuse and Neglect (CAN)] exam indicated that the minor had bruises, pattern, scars, and a fingernail injury concerning for inflicted trauma." Allegation b-11 stated, "On July 13, 2021, the minor, [J.C.], while at school did not wish to return home with her father. Appeared nervous. Her hands were shaking. And the child repeatedly said that she did not want to return home because her dad would smack her, and it hurt. The child stated that every time they come, her father pow pows her."

The juvenile court then adjudged M.C. and J.C. dependents of the court. The court ordered physical custody to be retained by Father and Mother, but found that it was

4

in the children's best interest for Mother to have primary custody while Father would have alternating weekend custody.  Father timely appealed.

## III.

## DISCUSSION

Father argues the allegations the juvenile court added to the petition and found true should be reversed on due process grounds and that the true findings on allegations b-1 and b-5 should be reversed for insufficient evidence.  He also contends all of the jurisdictional and dispositional orders should be reversed because there was no risk of harm to the children.  Finally, he argues the court abused its discretion by awarding Mother primary custody.  We reject Father's contentions and affirm.

A. *Father's Appeal Is Justiciable*

The Department and minors' counsel argue Father's appeal of the juvenile court's jurisdictional findings should be dismissed as moot because he does not challenge the jurisdictional findings concerning Mother, which are sufficient to support the juvenile court's jurisdiction.  Father, on the other hand, argues his appeal is justiciable and that we should exercise our discretion to reach the merits because the jurisdictional findings "affected" the juvenile court's dispositional findings and orders and will "certainly impact" future dependency and family court proceedings.

"As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.)  When, as here, an

5

appealing parent does not challenge the jurisdictional findings concerning the other parent, we still retain discretion to consider the merits of the parent's appeal if the findings "(1) serve[] as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) Courts have exercised this discretion in cases when the parent's appeal, if successful, would eliminate all jurisdictional findings against that parent and potentially affect the juvenile court's subsequent orders. (See, e.g., *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316-1317; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; *In re Drake M.*, *supra*, at pp. 762-763.)

Father contends the first and second exceptions apply here. As to the second, Father broadly claims the jurisdictional findings, if upheld, will negatively affect him in future dependency and family law proceedings. But he fails to assert "a single specific legal or practical consequence" that could result from the jurisdictional findings "within or outside the dependency proceedings." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1493.) We therefore decline to exercise our discretion to reach the merits of Father's appeal on this basis. (See *ibid*.)

Father next argues we should review the jurisdictional findings concerning him because they led the juvenile court to grant primary physical custody of M.C. and J.C. to Mother. Because the jurisdictional findings "'serve[] as the basis'" for this challenged

6

dispositional order, we exercise our discretion to address the jurisdictional findings

concerning Father.  (See *In re D.M.* (2015) 242 Cal.App.4th 634, 639.)

B.  *Due Process Challenge*

Father argues the amendments to allegations b-1 and b-5 and the entirety of

allegations b-9, b-10, and b-11 should be reversed because the juvenile court added them

and found them true in violation of his due process rights.  In Father's view, the juvenile

court violated his due process right to notice and an opportunity to be heard.  Father

forfeited his due process challenge by failing to assert it in the juvenile court.  (*In re

Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; *In re S.B.* (2004) 32 Cal.4th 1287,

1293.)

C.  *Allegations b-1 and b-5*

Father contends substantial evidence does not support the juvenile court's true

findings on allegation b-1 and b-5.  We disagree.

"'In reviewing the jurisdictional findings and the disposition, we look to see if

substantial evidence, contradicted or uncontradicted, supports them.  [Citation.]  In

making this determination, we draw all reasonable inferences from the evidence to

support the findings and orders of the dependency court; we review the record in the light

most favorable to the court's determinations; and we note that issues of fact and

credibility are the province of the trial court.'"  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

"To be sufficient to sustain a juvenile dependency petition the evidence must be

"'reasonable, credible, and of solid value'" such that the court reasonably could find the

7

child to be a dependent of the court. . . . . [Citation.]" (*In re R.M.* (2009) 175 Cal.App.4th 986, 988.) Father bears "the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

As for allegation b-1, Father does not challenge the juvenile court's true finding that he neglected the health and safety of the children in that he fails to provide the children with appropriate supervision as the children have walked to school by themselves due to the father sleeping. He challenges only the second part of the allegation, which states that while he was sleeping the child, J.C. sustained marks and bruises to her face, and various explanations were provided for the injuries. In Father's view, the juvenile court erred in finding this portion of the allegation true because sufficient evidence showed that J.C.'s injuries were accidental.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re R.T.*, *supra*, 3 Cal.5th at p. 633.) If substantial evidence supports them, we must affirm. (*Ibid.*) We may not reverse simply because the evidence supports a different finding (e.g., that J.C.'s injuries were accidental). (*Ibid.*)

Substantial evidence supports the juvenile court's true finding on allegation b-1. The social worker stated in a jurisdiction/disposition report that, according to an interview with Father, J.C. suffered scrapes and bruises on her face as a result of falling while Father was asleep. Consistent with that report, the social worker testified at the contested jurisdictional hearing that Father told her that J.C. fell off the couch and hit

8

herself while Father was asleep. Substantial evidence thus supports the juvenile court's finding true allegation b-1's statement that J.C. suffered injuries while Father was asleep. (See *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The testimony of one witness, even that of a party, may constitute substantial evidence."].)

J.C., M.C., Father, and Father's girlfriend gave conflicting explanations for J.C.'s injuries. J.C. said M.C. scratched her and hit her, but later recanted. Father said J.C. told him that she hit her face while playing with M.C., but then Father and his girlfriend later said J.C. hurt herself while at school. M.C. initially denied knowing that J.C. injured herself, but later said that J.C. hit her head on the table. Substantial evidence thus supports the juvenile court's finding true allegation b-1's statement that "various explanations were provided as to [J.C.'s] injuries."

Allegation b-5 states that J.C. "was observed to have five scratches . . . about four inches . . . in length on her chest on or about July 13, 2021" and that "[b]oth parents identified the other parent as the one who inflicted the scratches." Substantial evidence supports the juvenile court's finding the allegation true.

It is undisputed that, on July 13, 2021, J.C. went to daycare with Father and had five, four-inch-long scratch marks on her chest. Father argues the juvenile court erred in failing to find Mother caused the scratches "contrary to [the] overwhelming evidence that she was culpable for the injuries." Although J.C. said Mother had scratched her, Mother denied doing so and claimed Father had coerced J.C. into blaming her injuries on Mother. Father denied causing the scratches and blamed Mother. Substantial evidence thus

9

supports the juvenile court's finding that "[b]oth parents identified the other parent as the [one] who inflicted [the] scratches."

D. *Risk of Harm*

Father contends the juvenile court's jurisdictional and dispositional findings must be reversed because there was no risk of harm to J.C. and M.C. at the time of the contested jurisdictional hearing. We disagree.

A jurisdictional finding under section 300, subdivision (b) requires "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [minor], or a "substantial risk" of such harm or illness.'" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.) The third element "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur)." (*Ibid*.) To establish a defined risk of harm at the time of the jurisdiction hearing, there must be "'some reason beyond mere speculation to believe the alleged conduct will recur.'" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.)

Substantial evidence supports the juvenile court's finding that there was a substantial risk of harm to J.C. and M.C. at the time of the jurisdiction hearing. Both children suffered recurring, sometimes unexplained injuries while in their parents' care in the months before the hearing.

In November 2019, both children had bruises on their bodies. J.C. said Father hit her because she defecated in her pants. Father asserted he "might" have hit her too hard

10

because she "'shit all over herself.'" A few months later, Father admitted that he used inappropriate physical discipline on both children.

J.C. appeared malnourished and underweight in June 2021, just four months before the jurisdiction hearing. When the social worker interviewed J.C. at school in July 2021, J.C. reported that she did not always have enough to eat at Father's house. Although Father has been attending to his children's health needs and J.C.'s health had improved, the fact that J.C. appeared underfed in the months before the jurisdictional hearing supported the juvenile court's assertion of jurisdiction.

When the social worker asked J.C. asked if she wanted to go home to her Father's house, she appeared nervous and shaking. J.C. told the social worker that she was afraid to return to Father's care. She said that "'daddy will smack me, and it hurts'" and that "'Every time they come, daddy pow pows me.'"

Around the same time, Father acknowledged that his girlfriend had lied to the social worker in June 2021 about the cause of some of J.C.'s injuries. The girlfriend said J.C. got hurt at school, but J.C. and Father said she got hurt at home.

In early July 2021, Father claimed his arm was in a cast because he walked through a door. J.C. and M.C., however, said Father hurt his arm by punching the kitchen counter. During this same time, the children walked themselves to school because Father was asleep. And while visiting Father's home, the social worker had observed a strong smell of marijuana and a four-inch knife on the living room table where J.C. and M.C. could grab it.

From this evidence, the juvenile court could reasonably find that J.C. and M.C. remained at a substantial risk of serious harm. Substantial evidence thus supports the juvenile court's challenged jurisdictional/dispositional findings.

E. *Primary Custody*

Father contends the juvenile court erred by awarding primary custody of J.C. and M.C. to Mother. We disagree.

The juvenile court may award primary custody to one parent if the court finds that it is in the best interest of the child. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) We will not reverse a custody determination unless the juvenile court clearly abused its discretion. (*Ibid.*)

The juvenile court here reasonably found that awarding primary custody of J.C. and M.C. to Mother was in their best interests. Both children expressed fear about returning to Father's care, but had never expressed fear about returning to Mother's care. J.C. stated that Father frequently "pow pows" her, and Father admitted that he had used inappropriate corporal discipline. Both children had sustained several injuries while in Father's care, yet he appeared to be "unaware" of what had happened.

On this record, the juvenile court reasonably found that awarding primary custody to Mother was appropriate and in the children's best interests. The juvenile court did not abuse its discretion in making that decision.

IV.

DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


FIELDS
J.


RAPHAEL
J.