Filed 5/3/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | B284646 |
| | (Los Angeles County Super. Ct. No. DK22283) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANGELINA A., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Reversed in part and affirmed in part.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

In February 2017, a loaded gun was found in an unlocked closet in a bedroom where two-year-old D.L. slept.  In May 2017, the juvenile court determined that the parents' indifference to the risks posed by leaving a loaded gun in the child's reach presented an ongoing risk of danger to the child.  The court declared the child a dependent of the court and placed her in the home of her mother, with her father having monitored visitation.

We conclude the juvenile court's jurisdictional finding as to mother regarding ongoing risk was not supported by substantial evidence.  We affirm the court's order in all other respects.

## BACKGROUND

On February 9, 2017, Eli L. (father) was arrested for carrying a loaded firearm in public.  On February 21, 2017, the Department of Children and Family Services (DCFS) received an anonymous referral indicating police had found a loaded rifle, bulletproof vest, gun parts, and ammunition in an unlocked bedroom closet in a home where two-year-old D.L. resided.  The items were confiscated and removed from the home, but DCFS later verified that the gun and ammunition had been present.  A detective familiar with father's criminal case told DCFS that father was affiliated with a criminal street gang.

A social worker interviewed Angelina A. (mother), who stated that she never saw guns, gun parts, ammunition, or a bulletproof vest in the home, and had never seen father with any guns in his possession.  Mother advised the social worker that

2

she was no longer in contact with father, and he was not welcome in her home.

DCFS filed a Welfare and Institutions Code section 300 petition on behalf of D.L.[1] The juvenile court conducted a detention hearing and ordered the child released to mother and temporarily detained from father.

Mother was subsequently interviewed by a social worker, who asked if she was concerned about father leaving a loaded gun in reach of the child. Mother stated that she did not think father would put her child in danger. Mother also showed the social worker the closet in which the gun had been found, which was closed only by a curtain that did not reach the floor. Mother stated that she would not keep the child from father. The social worker observed D.L. climbing on top of a sofa and kitchen table during the visit.

A social worker interviewed father in jail. Father stated that the gun had been in a bag on top of a stack of blankets on the floor of a closet in the bedroom where D.L. slept. Father believed the gun was loaded, but it was there for only a week, and the child could not reach it, although he acknowledged she was a climber. Father stated that mother did not know about the gun. He felt he needed it for protection after he had been shot in 2010, but stated that in the future he would either not have a gun or lock it in a safe so the child could not access it.

The juvenile court conducted a jurisdictional and dispositional hearing, where mother, father, and minor's counsel asked that the court dismiss the petition. The court noted that

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

the risk of harm to the child was continuing because father was no longer in custody, and mother had a "lackadaisical" view and did not appear to be proactive in protecting the child, as she continued to allow father to babysit. Although the court noted that some of DCFS's concerns were speculative, it sustained the petition, declared D.L. a dependent of the court, and (1) removed her from father's custody, (2) placed her with mother, (3) ordered mother to receive family maintenance services, and (4) ordered father's visits to remain monitored.

Father did not appeal. Mother filed a timely appeal.

## DISCUSSION

### I. No Substantial Evidence Supported the Jurisdictional Findings as to Mother

Mother contends the juvenile court's findings of substantial risk of future harm because of the prior presence of a gun and ammunition were not supported by substantial evidence. We agree.

We review a jurisdictional order for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court

4

must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' " (*Ibid*.)

A child may be adjudged a dependent of the court under subdivision (b) of section 300 if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1).) The juvenile court need not find "that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child." (*In re R.T.* (2017) 3 Cal.5th 622, 624.) "The three elements for jurisdiction under section 300, subdivision (b) are: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) ' "serious physical harm or illness" ' to the [child], or a ' "substantial risk" ' of such harm or illness." ' [Citations.] 'The third element, however, effectively requires a showing that *at the time of the jurisdictional hearing* the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' " (*In re B.T.* (2011) 193 Cal.App.4th 685, 692.) Evidence of past conduct may be probative of current conditions. (*In re James R.* (2009) 176 Cal.App.4th 129, 135-136.) To establish a defined risk of harm at the time of the hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]" (*Id.* at p. 136.)

Dependency jurisdiction may be based on evidence that a parent stored a loaded gun in such a manner that it could be accessed by a child. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 995.)

Here, the juvenile court's finding of jurisdiction was based on father's storing a loaded rifle in a location that was accessible to D.L., and on mother's failing to protect the child by allowing father unlimited access to her despite knowing or having reason to know that a loaded gun was in the home. The court held that this conduct put D.L. at substantial risk of suffering serious physical harm.[2]

Reviewing the record in the light most favorable to the juvenile court's determinations, no substantial evidence supports the juvenile court's finding.

Mother argues that there was no risk at the time of the jurisdictional and dispositional hearing. We agree. Father no longer resided with mother and D.L., and was not welcome in mother's home. He recognized that in the future he would either not have a gun or lock it in a safe so the child could not access it. Any risk of future danger to D.L. posed by father's keeping a loaded gun in the house would be entirely speculative. Therefore, no sufficient evidence in the record supported the juvenile court's finding of a future risk.

In *Yolanda L., supra,* Division Eight of this district found future risk based on evidence that father's drug trafficking activity would likely reoccur, reasoning that firearms are "tools of the trade" in the "narcotics business." (*In re Yolanda, supra,* 7

---

[2] Apparently DCFS was not concerned about the child's safety in the mother's care, as in a jurisdictional report dated May 10, 2017, the workers stated, "[a]t this time, although there are no immediate concerns for the child's safety in mother's care, DCFS is concerned about the risk associated with mother's ability to protect the child upon father's release from jail. Father's release date is unknown at this time."

Cal.App.5th at p. 996.) No evidence of drug activity is present in this case, though father was affiliated with a gang. In *In re C.V.* (2017) 15 Cal.App.5th 566, this court suggested that gang activity alone was insufficient for taking jurisdiction of a child. (*Id.* at p. 573.) Nothing in the record suggests that father's gang activity endangered the child.

Given that there was no substantial risk of future harm, we need not address whether the gun was stored in such a manner that it could be accessed by D.L.

## II.   Because the Juvenile Court Has Jurisdiction Over the Child, It May Require a Non-Offending Parent to Participate in Services

Mother argues that because there were no grounds for assuming jurisdiction, ipso facto there were no grounds for the juvenile court's dispositional orders. She does not otherwise challenge the juvenile court's dispositional orders, including requiring her to receive family maintenance services.

Mother's argument is a non sequitur. Irrespective of whether the court's jurisdictional findings as to her were well founded, the court had jurisdiction over the child. Accordingly, it had the authority to order a nonoffending parent to participate in services. Section 362, subdivision (a) gives the court the authority, once a child is declared a dependant, to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." Division Two of our district has explained: "The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*In re Briana V.* (2015) 236

Cal.App.4th 297, 311; see *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

## DISPOSITION

The juvenile court's jurisdictional finding as to mother is reversed. The court's order is otherwise affirmed in all respects.

CERTIFIED FOR PUBLICATION.


CHANEY, Acting P. J.

We concur:


JOHNSON, J.


BENDIX, J.

8