Filed 1/21/22  In re Richard M. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re RICHARD M., JR. et al., Persons Coming Under the Juvenile Court Law. | B310916 (Los Angeles County Super. Ct. No. 20CCJP05385A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>RICHARD M., SR.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Dismissed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

Richard M., Sr. (Father), appeals from the jurisdiction findings and disposition order declaring 16-year-old Richard M., Jr., 14-year-old Jordan M., and 11-year-old Trinity M. dependents of the juvenile court under Welfare and Institutions Code[1] section 300, subdivision (b)(1), after the court sustained allegations Father and Maria M. (Mother) had a history of engaging in violent altercations in the presence of the children and Mother failed to protect the children from Father's abuse. Father contends insufficient evidence supports the court's finding the children were at substantial risk of harm due to domestic violence between the parents.

Because Mother does not appeal from the jurisdiction findings as to her, and Father does not challenge specific aspects of the disposition order or identify adverse consequences he would suffer if we dismiss the appeal, we dismiss the appeal as nonjusticiable.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Referral, Investigation, and Petition*
On September 14, 2020 the Los Angeles County Department of Children and Family Services (Department)

---

[1]    Further statutory references are to the Welfare and Institutions Code.

2

received a referral after the Pomona Police Department responded to Mother's call for adult protective services. Mother told the responding police officer that Father was emotionally abusing the children and manipulating them to disrespect Mother, causing Mother to become emotionally unstable and distressed. A social worker who responded to the home expressed concern the home was filled with clutter and was nearly uninhabitable.

On September 14, 2020 a social worker interviewed Father and the children separately. Father stated Mother was bipolar and had acted "'out of control'" and aggressively in prior years, but she was now on medication that reduced her anger. Father admitted he and Mother fought frequently and used derogatory words with each other in the presence of the children. Father stated Mother used to hit the children prior to receiving mental health treatment a few years earlier, and Father had contacted law enforcement on two occasions when Mother was disciplining the children, but he denied any current physical abuse.[2] Father believed the children could be in danger if Mother became manic again, and he had instructed the children to contact the police if Mother acted in an aggressive manner.

Richard told the social worker that Mother and Father argued a lot, but he denied they ever got into a physical altercation. Jordan and Trinity similarly stated the parents argued constantly and should get divorced, but they denied

---

[2] A 2006 referral reported that Mother was seen slapping one of the children during a medical appointment. The family participated in voluntary family maintenance services in 2006 and 2007, and Mother completed 26 weeks of anger management classes.

observing the parents hit each other or the children. The children each reported feeling safe in the home, and the social worker did not observe any visible marks indicative of abuse. The social worker completed a safety walkthrough of the residence and found the home and yard extremely cluttered and unsanitary, although on later visits the social worker found some improvement in the condition of the home.

On September 24, 2020 a social worker interviewed Mother at the family home. According to Mother, Father insulted and verbally abused Mother on a constant basis, called her worthless, mocked her religion, and encouraged Richard and Jordan to disrespect her. Mother had been diagnosed with bipolar disorder 10 years earlier and had been hospitalized three years earlier, but she was currently managing her condition with medication and was seeing a psychiatrist and a therapist.

The detention report reflected that on July 18, 2009 Mother was arrested and later convicted for inflicting corporal injury on Father. On January 17, 2013 Father was arrested for false imprisonment, domestic battery, and misdemeanor child endangerment after Mother reported Father held her neck and pushed down on her chest during an argument in the presence of Trinity.

On October 9, 2020 the Department filed a petition on behalf of Richard, Jordan, and Trinity under section 300, subdivision (b)(1), alleging Mother had a history of mental and emotional problems, including a diagnosis of bipolar disorder and major depression, which rendered Mother incapable of providing regular care for the children, and Father failed to protect the children from Mother's mental and emotional problems. At the October 14, 2020 detention hearing the court ordered the children

released to the parents with Department supervision, including unannounced home visits and referrals for family preservation services, counseling for Mother, and therapy for the children.

On November 20, 2020 the Department filed an amended petition adding a count under section 300, subdivision (b)(1), alleging that Mother and Father had a history of engaging in violent altercations in the presence of the children; on one occasion Father had grabbed Mother and threw her on the floor; on another occasion Father placed Mother in a headlock; Mother had been arrested and convicted in 2009 for domestic violence; Father was verbally abusive to Mother in the presence of the children; and Mother failed to protect the children from Father's physical and verbal abuse of Mother. The amended petition also alleged the family home was unsanitary and Father hoarded items.

B.     *The Jurisdiction and Disposition Report and Addendum*

Richard and Jordan reported to the dependency investigator that the parents continued to argue and yell. Trinity reported that Father "'gets so mad'" at Mother. She recounted a recent incident when Father started screaming and throwing food when he thought someone had taken his ice. Trinity did not recall seeing Mother or Father hit each other, but she remembered both of them throwing things on the floor when she was around seven years old. She added, "'They were pushing each other. I was in the hallway crying.'" Trinity said Father was "'really mean'" to Mother, and her brothers were mean to her, explaining they treated her "'like my dad treats my mom.'"

5

Mother reported Father had been controlling and verbally and emotionally abusive from shortly after they married 18 years earlier. Mother was diagnosed with severe depression when Richard was one year old, which she attributed to "'the way [Father] treated her.'" Mother stated that when she was pregnant with Trinity, Father "'grabbed [her] by the arms and threw [her] on the kitchen floor'" after Mother threw out some clothing. Subsequently, Mother hit Father when he was verbally abusing her, and she was arrested. On a different occasion, "[Father] put [her] in a headlock and was choking [her]." Another time, Mother tried to get away from Father while they were arguing, "'when he grabbed [her] by the neck, like a choke hold. Trinity saw that.'" Father was often verbally aggressive towards Mother in the presence of the children.

Father reported his arguments with Mother arose because "'she does weird things, over and over,'" and she engaged in obsessive cleaning. With respect to Father's arrest in 2013 for false imprisonment and battery, Father stated, "'False things were written.'" Father reported he followed Mother into the laundry room during an argument, and as he tried to push his way into the room, "'she closed the door on [his] arm. She said she wanted to get away from [him]. They dropped the charges.'"

The dependency investigator concluded, "The parents as well as the children reported a lot of arguing between the parents and at least two incidents when the incidents became physical. The parents have both been arrested for domestic violence . . . . [¶] . . . The arguments appear to be happening due to [F]ather hoarding and [F]ather not allowing [M]other to clean the home. . . ."

6

C.    *The Jurisdiction and Disposition Hearing*

At the November 18, 2020 jurisdiction and disposition hearing, the juvenile court sustained the allegations of the domestic violence count as to both Father and Mother.[3]  The court dismissed the counts relating to Mother's mental health and the unsanitary condition of the home.  The court stated, "It appears there . . . is ongoing domestic violence.  It doesn't appear to be physical—or as physical as it was in the past, but the way the parents treat each other is obviously domestic violence.  And it's reached the point where now even the children are getting in on the act . . . .  And it's not appropriate, and it puts them at further risk."

The juvenile court declared the children dependents of the court under section 300, subdivision (b)(1), and ordered them released to the home of the parents with family maintenance services.  The court ordered Father to participate in a 52-week domestic violence program for perpetrators, conjoint counseling with Mother, and individual counseling to address case issues including anger management.

Father timely appealed.  Mother did not.

---

[3]     The juvenile court struck the words "failed" and "failure" from the petition as to Mother's failure to protect the children, sustaining the allegations that "[Mother] was unable to protect the children" and Mother's "inability to protect the children endangers the children's physical health and safety" and places them at risk of serious physical harm.

# DISCUSSION

On appeal, Father contends insufficient evidence supports the juvenile court's jurisdiction finding that the children were at substantial risk of harm due to domestic violence between the parents. Father further contends the disposition orders "were improper in that they were necessarily based on the jurisdictional findings." However, Father does not challenge any specific aspect of the disposition plan, such as placement of the children in the home of the parents with family maintenance services or his mandated participation in a domestic violence program and counseling. Because Mother has not appealed the jurisdiction findings as to her, and Father has not identified any adverse consequences he will suffer if the appeal is dismissed, we conclude the appeal is not justiciable.

An appeal from a jurisdiction finding under section 300 is not justiciable where "no effective relief could be granted . . . , as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such [challenged] jurisdictional grounds." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 329; accord, *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].) "[A] dependency court has jurisdiction when the actions of either parent bring the child within the statutory definition of a dependent, which fits with the purpose of a dependency proceeding to protect the child, rather than prosecute the parents. [Citation.] Accordingly, the court may base jurisdiction on the actions of one or both parents, and once

8

established, the court may enter orders binding both parents." (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1285-1286; accord, *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 ["'[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent.'"]; *id.* at p. 309 ["[W]e need not address jurisdictional findings involving one parent where there are unchallenged findings involving the other parent."].)

Nevertheless, the appellate courts "may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].'" (*In re D.P.* (2015) 237 Cal.App.4th 911, 917, quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; accord, *In re Madison S., supra*, 15 Cal.App.5th at p. 329; *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316.)

Here, regardless of whether we grant Father relief, the juvenile court would have jurisdiction over the children based on the sustained jurisdiction findings as to Mother, including her perpetration of domestic violence (the 2009 conviction) and her inability to protect the children from Father's domestic violence—findings she has not challenged on appeal. (*In re Madison S., supra*, 15 Cal.App.5th at p. 329; *In re I.A., supra*, 201 Cal.App.4th at p. 1490.) Although Father challenges the disposition order, he argues only that the order should be reversed because the jurisdiction findings should be reversed. He does not specifically

9

challenge the children's placement in the parents' home, the order for family maintenance services, or the requirement he complete a domestic violence program and counseling.[4]  In supplemental briefing,[5] Father contends that if he were "found to be a non offending parent, his dispositional case plan would necessarily be different."  However, the juvenile court has discretion to order a disposition case plan for Father—including family maintenance services, a domestic violence program, and counseling—based on the sustained allegations against Mother. (See *In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 ["Irrespective of whether the court's jurisdictional findings as to her were well founded, the court had jurisdiction over the child.  Accordingly, it had the authority to order a nonoffending parent to participate in services."]; *In re Briana V., supra*, 236 Cal.App.4th at p. 311 ["there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"].)

---

[4]      In his opening brief Father argues as to the disposition order, "In this case, the juvenile court declared the children dependents of the juvenile court and ordered them placed with parents under a plan of family maintenance. . . .  These orders were improper in that they were necessarily based on the jurisdictional findings of the juvenile court.  [Citation.]  As those findings should be reversed, the dispositional order should go with them."

[5]      In response to our invitation, Father and the Department submitted supplemental letter briefs addressing whether the appeal is justiciable.

## DISPOSITION

The appeal is dismissed.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

11