Filed 5/1/25  In re T.D. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re T.D., a Person Coming Under the Juvenile Court Law, | B336267 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 23LJJP00263 and 23LJJP00263A) |
| Plaintiff and Respondent, | |
| v. | |
| D.D., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Debra L. Gonzalez, Commissioner.  Affirmed.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

D.D. (father) appeals from the jurisdiction and disposition orders in dependency proceedings involving his daughter, T.D. (born 2010). The juvenile court sustained allegations that father, while living with T.D., communicated over the internet with someone he believed to be a 14-year-old girl, sent a sexually explicit photo, and sought to meet her to engage in sexual intercourse. Father was arrested and charged with crimes against a minor. The juvenile court sustained allegations that father's conduct placed T.D. at risk of physical harm and sexual abuse. Father argues that substantial evidence did not support the juvenile court's findings. We disagree and affirm.

## BACKGROUND[1]

In July 2023, the Los Angeles County Department of Children and Family Services (DCFS) learned that father had been arrested by the Hermosa Beach Police Department during an online sting operation that targeted child exploitation. Father was charged with violations of Penal Code, section 288.2, subdivision (a)(2) (sending or exhibiting harmful matter to a minor) and section 288.4, subdivision (a)(1) (arrangement of meeting with minor for purpose of engaging in lewd and lascivious behavior). At the time, T.D. was 12 years old and lived with father.

In August 2023, DCFS filed a dependency petition against father and T.D.'s mother, P.M. (mother), who is not a party to this appeal. The initial petition was superseded by a first amended petition, which later was amended by interlineation.

---

[1] We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) We do not recite the entire factual and procedural background, as the parties are familiar with the facts of the case and its procedural history. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) Undesignated statutory references are to the Welfare and Institutions Code.

The operative petition alleged that father, over an approximately one-month period, communicated over the internet with someone he believed to be a 14-year-old child. He solicited the ostensible child to send him "sexually explicit photographs" and to engage in "illicit sexual acts." On "multiple occasions," father requested a meeting "with the intent to have sexual intercourse" and sent sexually explicit photographs to his target, including a photo of his erect penis. This activity led to father's arrest for violation of Penal Code, section 288, subdivision (a)(1), endangered T.D., and placed her at substantial risk of harm and sexual abuse.

T.D. initially was detained from father, but she returned to his home in October 2023 under an extended visit arrangement that was conditioned on father's enrolling in a parenting class and individual counseling and cooperating with DCFS's announced and unannounced visits.

After being continued several times, the jurisdiction and disposition hearing took place in March 2024. The juvenile court sustained the allegations against father and declared T.D. a dependent of the court. T.D. was placed in father's home under DCFS's supervision.

Father appealed from the jurisdiction and disposition orders. In September 2024, the juvenile court found that the conditions justifying the initial assumption of dependency jurisdiction "no longer exist and are not likely to exist if supervision is withdrawn . . . ."[2] The juvenile court terminated jurisdiction, signed a Juvenile Custody Order, and released T.D. to father.

---

[2]     We grant DCFS's unopposed motion requesting judicial notice of the juvenile court's orders terminating jurisdiction. (Evid. Code, § 452, subd. (d) [authorizing judicial notice of court records]; *Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.App.4th 651, 658 [court may take judicial notice of any orders, findings of facts and conclusions of law, and judgments within court records].)

**DISCUSSION**

Father asserts that the findings underlying the jurisdiction and disposition orders are not supported by substantial evidence.

## A.    Mootness

The juvenile court terminated its jurisdiction during the pendency of this appeal.  Though termination of jurisdiction generally moots an appeal from an earlier order, dismissal for mootness is not automatic (*In re T.R.* (2024) 107 Cal.App.5th 206, 214), and "courts may exercise their inherent discretion to reach the merits of the dispute." (*In re Gael C.* (2023) 96 Cal.App.5th 220, 224–225; citing *In re D.P.* (2023) 14 Cal.5th 266, 285–286 [factors to consider in exercising discretion to hear a moot appeal include the egregiousness of the findings against a parent and whether the findings could impact future dependency proceedings].)

Father argues we should review the merits because the jurisdictional findings could result in his inclusion in the Child Abuse Central Index (CACI), Penal Code, section 11170.[3]  DCFS responds that it does not object to our deciding the appeal on its merits.  In light of the nature of the allegations against father and the absence of an objection from DCFS, we exercise our discretion to decide the appeal on its merits.

## B.    Governing Law and Standard of Review

The trial court exercised its jurisdiction over T.D. under section 300, subdivisions (b)(1) and (d).  "The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being

---

[3]     California's Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) requires DCFS to forward substantiated reports of severe child abuse or neglect to California's Department of Justice for inclusion in the CACI.  (See *D.P., supra*, 14 Cal.5th at p. 278; Pen. Code, § 11169, subd. (a).)

physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2[,] [subd. (a)], italics added.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

"Jurisdictional findings must be made by at least a preponderance of the evidence." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) In reviewing a challenge to the sufficiency of the evidence supporting jurisdictional findings, we determine if substantial evidence, contradicted or uncontradicted, supports them. (*I.J.*, *supra*, 56 Cal.4th at p. 773.) We review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. (*Ibid.*) We note that issues of fact and credibility are the province of the trial court. (*Ibid.*) We do not reweigh the evidence or exercise independent judgment but merely determine if there are sufficient facts to support the findings. (*Ibid.*) We must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*)

"The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.) To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value. (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)

## C. Substantial Evidence Supports the Juvenile Court's Findings Under Section 300, Subdivision (b)(1)

"A child may be adjudged a dependent of the court under subdivision (b) of section 300 if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her

parent . . . to adequately supervise or protect the child.' (§ 300, subd. (b)(1).)" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146 (*D.L.*).) The three elements for jurisdiction under section 300, subdivision (b) are: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) serious physical harm or illness to the child, or a substantial risk of such harm or illness. (*Ibid.*) "Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) "'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*I.J.*, *supra*, 56 Cal.4th at p. 773; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1004 ["The purpose of dependency proceedings is to prevent risk, not ignore it"].)

Father argues that substantial evidence did not support any of the elements necessary for the exercise of jurisdiction under subdivision (b). He argues there was no evidence that T.D. suffered or was likely to suffer any harm or sexual abuse and that undisputed evidence established that T.D. was well-adjusted and thriving in father's care. Father argues that the juvenile court failed to focus on risk to T.D., that his online conduct involved only one fictitious person, and while there were "numerous communications," it was a single lapse of judgment that did not threaten serious harm to T.D.

As he did below, father relies primarily on *In re B.T.* (2011) 193 Cal.App.4th 685 (*B.T.*) to support his argument that insufficient evidence supported the jurisdictional findings. In *B.T.*, the dependent child was an infant who was conceived after her 38-year-old mother engaged in sexual intercourse with a 14-year-old boy, Miguel, over a period of months. (*Id.* at p. 688.) Mother was arrested and charged with unlawful sexual

6

intercourse and caretaker lewd and lascivious acts. (*Id.* at p. 689.) The juvenile court exercised dependency jurisdiction over B.T., basing "its ruling in part on the lack of judgment and impulse control demonstrated by [mother's] relationship with Miguel, which represented a 'danger to [B.T.].'" (*Id.* at p. 691.)

The Court of Appeal reversed, agreeing with mother that the jurisdictional findings were not supported by substantial evidence. (*B.T., supra,* 193 Cal.App.4th at p. 687.) There was no evidence that B.T. suffered any serious physical harm while in mother's care (*id.* at p. 692) and the risk of future harm was speculative because mother was out on bail, the criminal charges were still pending, she had no prior criminal record, and her actions with Miguel did not involve serious harm (*id.* at p. 693). Further, the findings evidenced the juvenile court's "lack of focus" on B.T. (*Id.* at p. 693.) Though the juvenile court characterized mother's actions with Miguel as demonstrating lapses in judgment and impulse control, B.T. was unborn when the lapses occurred, and no evidence indicated that the lapses were habitual, likely to recur, or threatened harm to B.T. (*Ibid.*)

In this case, the juvenile court distinguished *B.T.* Among other distinctions, the court noted the child in *B.T.* was an infant, while T.D. "is almost the same age as the 14-year-old girl that father believed he was soliciting"—"a very significant difference" that "supports a current risk." Further, the lapses of judgment and impulse control that resulted in the *B.T.* mother's having sex with a minor could not have endangered the infant, who did not exist when those lapses occurred. In contrast, the risk of harm to T.D. arose from father's "soliciting someone he believed was 14 years old . . . at a time when his own daughter of almost the same age was living in his own home" and his communicating with an

ostensible 14-year-old on "many occasions . . . over a months' time."[4]

The juvenile court stated that it "wholeheartedly agree[d]" with the *B.T.* court's statement that "the dependency legislative scheme is focused on the best interests of the child and not punishing the parents," and that its findings "are not in any way punishment of the father." Thus, the court correctly indicated that it was placing its focus on "[T.D.'s] safety, and her best interest." The court acknowledged father had enrolled in individual counseling and parenting classes, but because "it is very early in that journey," the court "do[es] not find that at this stage the risk to [T.D.] has been removed. So, therefore, [the court] find[s] that there is a current risk to her."

We agree with the juvenile court that *B.T.* is distinguishable from this case and did not require dismissal of the allegations against father. Here, evidence in the record indicates that while T.D. was living in his home, father posted on an online platform that he was a 38-year-old male who was looking for a "girl to perform sexual acts" in person, including oral copulation. On June 12, 2023, a detective using an undercover persona replied to father's post and received a response from him that included a photo of an erect penis. In the following weeks, the two exchanged emails and text messages in which the detective responded as a 14-year-old who did not have a driver's license yet and sent father a photo that appeared to depict a 14-year-old female. After receiving this information,

---

[4] The juvenile court further distinguished *B.T.* for reasons with which we do not agree. It noted the mother in *B.T.* had a lengthy preexisting relationship with Miguel before they had sex, and he was a willing participant. However, Miguel could not legally consent to having a sexual relationship with the mother. (Pen. Code, § 288, subd. (c)(1); *People v. Paz* (2000) 80 Cal.App.4th 293, 297 [Subdivision (c)(1) reflects "a legislative desire to protect 14– and 15–year–olds from predatory older adults to the same extent children under 14 are protected by subdivision (a)"].)

8

father continued to express in graphic detail his desire to engage in sex acts and stated he wanted to meet in person to perform these acts.  Upon his arrest, father admitted he believed he had been communicating with a 14-year-old.  The juvenile court reasonably could infer from this evidence that father had a sexual attraction to girls close in age to the daughter who lived with him, the attraction motivated him to spend a month soliciting sex from someone he believed to be a young teenager online, and there was some risk of harm to T.D., even if no sexual abuse had yet occurred.

The juvenile court could also reasonably infer that father's progress in services at that juncture was not sufficient to eliminate the risk of harm to T.D.  Father began individual counseling, ordered as a condition of the extended visit arrangement, in late October 2023.  As of the month before the March 2024 adjudication and disposition hearings, his therapist reported that they had explored "protective parenting, communication skills, coping strategies to reduce anxiety and stress, conflict resolution, and improving self-esteem," but the report did not mention discussing any sexual issues.  The court found father's progress in services to be "substantial," but it also found that because father was at the "very early" stage of his "journey," there remained a current risk.  Its concern that father's sexual issues had not yet been fully mitigated is evident from its approval of a case plan that included "[i]ndividual counseling to address case issues including . . . addictions, *specifically sexual addictions*."  (Italics added.)

The record does not support father's argument that the juvenile court made its findings to punish him.  To the contrary, the court's remarks at the hearing, its order, and case plan indicate that its priorities were ensuring T.D.'s safety while carrying out the goal of family reunification.  It struck a balance by releasing T.D. to father while requiring him to address the behavior that brought the family to DCFS's attention and comply

9

with unannounced home visits by DCFS. Six months later, the juvenile court apparently was satisfied with father's progress because it terminated jurisdiction.

Thus, substantial evidence supports the findings that father created a serious risk of physical harm to T.D. through the activities that led to his arrest and the risk was not eliminated by the time jurisdiction and disposition orders were issued. Father's arguments to the contrary purport to reweigh the evidence in his favor. It is not this court's role to reweigh evidence or determine witness credibility. (*I.J., supra*, 56 Cal.4th at p. 773.)[5]

In addition to challenging the juvenile court's exercise of jurisdiction under section 300, subdivision (b), father contests the court's findings under subdivision (d). Because we conclude that substantial evidence supported jurisdiction under subdivision (b), we need not analyze the sufficiency of the court's findings concerning subdivision (d). When "'a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*I.J., supra*, 56 Cal.4th at p. 773.)

---

[5] Father also argues for the first time on appeal that no expert testimony was presented from which the juvenile court could find that a father who solicited a 14-year-old child for sex was likely to sexually abuse his teenage daughter. This argument is forfeited, as father failed to raise the absence of expert testimony to the juvenile court. (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292 ["In dependency proceedings, as elsewhere, a litigant forfeits an appellate argument by failing to raise it before the trial court"].)

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed.


MORI, J.


We concur:


ZUKIN, Acting P. J.


COLLINS, J.

11