Filed 7/25/25  In re A.J. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.J. et al., Persons Coming Under the Juvenile Court Law. | B341241 (Los Angeles County Super. Ct. No. 21CCJP04085) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.J., Defendant and Appellant. | |

APPEAL from the jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Syna N. Dennis, Judge.  Appeal dismissed.

John M. Kennedy, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother appeals from the juvenile court's jurisdictional and dispositional orders. She contends the court erred in sustaining allegations she failed to protect her children and requiring her to attend therapy and parenting classes. We conclude her claims are moot and also decline to exercise our discretion to consider them. We therefore dismiss the appeal.

## BACKGROUND

Mother has two children—A.J. (born in 2021) and A.L. (born in 2022). A.J. and A.L. have different fathers. During the current dependency proceedings, the children remained in mother's custody.

### 1. *First dependency proceeding*

The first dependency proceeding commenced after a doctor reported A.J. had two posterior rib fractures "highly probably" caused by physical abuse. The fractures occurred in July 2021 after mother and A.J.'s father struggled over A.J. with each trying to take A.J. away from the other.

In April 2022, the juvenile court sustained allegations A.J. suffered two posterior rib fractures consistent with inflicted trauma, which fractures were the product of mother's and A.J.'s father's "deliberate, unreasonable, and neglectful acts . . . ." Specifically, the court sustained allegations mother and father

2

"pulled" A.J. "back and forth in an effort to remove the child from one another's hold." The court also found mother and A.J.'s father had a history of violent altercations in A.J.'s presence.

The juvenile court terminated jurisdiction on April 19, 2023 with an order granting the parents joint legal custody and mother sole physical custody.

## 2.    *Second dependency proceeding*

In June 2024, the Los Angeles County Department of Children and Family Services (DCFS) filed a second dependency petition, alleging J.L. (A.L.'s father), endangered A.L. when, in A.L.'s presence, J.L. engaged in a violent altercation with an unknown person and brandished a firearm. DCFS alleged mother knew or reasonably should have known J.L. possessed a loaded weapon and mother allowed J.L. to live in the family home and have unmonitored contact with the children. The juvenile court sustained the allegations under Welfare and Institutions Code section 300, subdivision b(1) (failure to protect) and subdivision j (abuse of sibling). DCFS further alleged J.L. was arrested for possession of a firearm and that A.L. and A.J. were at risk of serious physical harm, damage, and danger. According to DCFS, J.L. exposed A.L. to a dangerous situation by carrying a firearm while caring for A.L.

In interviews with social workers, mother described the events set forth in the petition. According to mother, an unknown person almost drove into J.L. and A.L. in a DMV parking lot. J.L. argued with the unknown person and handed mother his fanny pack. Later, law enforcement searched mother and found a gun in the fanny pack. Mother reported she did not know J.L. was carrying a gun and asserted she would "never allow father to bring firearms near her children." Mother told the

3

social worker J.L. was not physically abusive towards her although once, she and J.L. had a verbal altercation and she asked J.L. to leave the home. J.L. returned home a week later. Mother claimed she would ask J.L. to move out to allow the children to continue living with her.

When a social worker interviewed father, he stated that mother " 'had nothing to do with this.' " Father explained that as he was walking with mother and A.L. inside the DMV parking lot, an unknown driver said, " 'Get your ass on the sidewalk.' " Father replied, " '[B]itch, there is no sidewalk.' " The driver exited the car and shoved father, at which point father showed the driver his firearm. Father stated he kept the firearm hidden in bushes outside the apartment where he lived with mother and the children. Father denied bringing the firearm inside the house or "around" the children.

Prior to the jurisdictional hearing, mother enrolled and participated in parenting and domestic violence classes. Mother said, " '[W]e all need therapy.' " Mother told the social worker she would not allow father "to immediately move back in when he is released from jail." Mother also reaffirmed that she was unaware of J.L.'s gun and stated J.L. hid it from her. Mother informed the social worker, " 'Every time he gets caught, the police confiscate the weapon. So I didn't know he had it. There are a lot of things that he doesn't tell me, and I have to find out from his mom. It's just the lifestyle he grew up around. I told him to let it go; I don't like gangs.' " Mother told the social worker that father " 'never said anything to [her] about having a gun in the bushes.' " Mother added, " 'There aren't really that many bushes out there anyways.' "

4

The social worker concluded mother's claim not to have known about the gun in the fanny pack was not reasonable: "Although the mother stated she wasn't aware [father] possessed a gun, the mother has been involved and/or made aware of several past inciden[ts] where [J.L.] has dangerously used a weapon he was not authorized to have. Mother reported she is not sure how [J.L.] keeps obtaining guns because they are always confiscated by law enforcement. . . . [D]espite mother allegedly being unaware that the bag [father] gave her at the DMV contained a gun, she reasonably should have known based on their history."

### 3. *Additional dependency referrals and incidents involving mother*

In addition to referrals related to the first sustained petition, in August 2023, a caller reported to DCFS an incident at a train station involving mother and J.L. Although the record of this incident is sparse, apparently the caller stated that mother had called J.L. after an unidentified male harassed her at a train station by calling her names. When J.L. arrived at the train station, he had a firearm and "hit[ ] the random man multiple times." DCFS's description refers to A.J. and A.L. as "Victim(s)" but does not elaborate other than to characterize the incident under the title, "General Neglect." DCFS describes the disposition as "INCONCLUSIVE for allegations of General Neglect." (Boldface omitted.)

Reflecting another incident, an officer's crime/incident report stated that on March 8, 2024, officers were dispatched to mother's home. Mother told officers she and J.L. had a physical altercation in a vehicle in the children's presence. J.L. slapped mother on the right side of her face causing her to bleed. Mother

exited the vehicle and J.L. drove away before mother could remove the children.  After a caller reported the incident to DCFS, DCFS found the allegations inconclusive for allegations of emotional abuse.

### 4.     *After a hearing, the juvenile court modified and sustained the second dependency petition*

No one testified at the hearing giving rise to this appeal. The juvenile court struck the allegation that mother *knew* of J.L.'s possession of a loaded weapon.  The court sustained the remaining allegations against mother.[1]  The court found mother "reasonably should have known" J.L. possessed a loaded weapon in close proximity to A.L.  The court then removed the children from J.L.'s custody and ordered they remain in mother's custody. The court ordered mother to participate in parenting classes and individual counseling.

On June 16, 2025, the juvenile court terminated jurisdiction, leaving A.L. in mother's custody.[2]  The court also terminated jurisdiction over A.J. and awarded mother sole legal and physical custody of A.J.

## DISCUSSION

Mother contests only the jurisdictional findings against her as not supported by substantial evidence.  She asserts we should exercise our discretion to review the jurisdictional findings

---

[1]  Mother does not contest the court's jurisdictional findings against J.L.  We thus do not address them.

[2]  On our own motion and finding good cause, we take judicial notice of the juvenile court's orders dated June 16, 2025 and June 18, 2025 terminating jurisdiction over A.J. and A.L.

6

because the juvenile court's dispositional order requiring her to attended classes and counseling was based on those findings and because mother is "truly non-offending."

Because the juvenile court terminated jurisdiction, mother's arguments are moot. Mother retained full custody of the children, and having terminated the dependency proceedings, the court no longer has jurisdiction to enforce attendance at classes and counseling. (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*) [case is moot when it is impossible to grant an appellant effective relief].)

We recognize, "[e]ven when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P.*, *supra*, 14 Cal.5th at p. 282.) For example, a parent's meritorious challenge to a jurisdictional finding may be moot, and thus evade review, where there is a separate " ' "unassailable jurisdictional finding" ' " unrelated to the appealing parent. (*Id.* at p. 283.) In determining whether to exercise discretion, an appellate court may also consider whether a jurisdictional finding could potentially impact current or future dependency proceedings. (*Id.* at p. 285.) "Ultimately, in deciding whether to exercise its discretion, a court should be guided by the overarching goals of the dependency system: 'to provide maximum safety and protection for children' with a 'focus' on 'the preservation of the family as well as the safety, protection, and *physical* and emotional well-being of the child.' [Citations.]" (*Id.* at pp. 286–287, italics added.)

We decline to exercise our discretion to reach the merits of mother's appeal. We do not agree with mother's assertion that she is "truly non-offending" because in a prior dependency case, the juvenile court sustained allegations A.J. suffered broken ribs

because of mother's and A.J's father's abuse.  The allegations against mother here are no more egregious than those in the prior case.

Assuming arguendo the juvenile court should not have sustained the jurisdictional allegations against mother, the juvenile court could still order mother to attend counseling and parenting classes, especially given the multiple prior dependency proceedings and mother's stated need for therapy.  (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 [juvenile court has authority to order nonoffending parent to participate in services].)  Considering the merits of mother's appeal would not further preservation of the family or the children's safety because the court terminated jurisdiction with an order granting mother sole custody of A.J. and leaving A.L. in mother's custody.  Finally, we discern no legal issue of continuing public interest capable of evading review that would support our addressing an otherwise moot appeal.  (*In re Erica R.* (2015) 240 Cal.App.4th 907, 911 [court exercised discretion to reach the merits of minor's challenge to an electronic search condition even though minor's successful completion of probation rendered her challenge moot].)

For all these reasons, we decline to exercise our discretion to consider the merits of mother's appeal and dismiss the appeal.

## DISPOSITION

The appeal is dismissed.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.