Filed 1/8/26  In re A.M. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B342064 (Los Angeles County Super. Ct. No. 24CCJP02376A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Jean M. Nelson, Judge.  Reversed and remanded.

Thomas Stephens, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.

_____

S.M. (mother) argues that insufficient evidence supports the juvenile court's jurisdictional and dispositional orders. We agree. Accordingly, we reverse those orders and remand the matter to the family court for a hearing on any outstanding custody and visitation issues.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Family

Mother and A.M. senior (father) had their son A.M. in July 2014. They separated in November 2022, and mother got a restraining order against father that required him to move out of the family home. The home was placed on the market, and mother planned to (and did) move to Florida once it sold.

Father filed a petition in the family court to prevent mother from moving A.M. to Florida. That court issued an order in April 2023, giving parents joint legal and physical custody, preventing mother from moving A.M. to Florida, and prohibiting corporal punishment.

In January 2024, mother filed a request to move to Florida with A.M., which the family court denied on June 4, 2024. The court kept in place the joint legal and physical custody order but awarded sole physical custody to father upon mother's move to Florida.

On June 19, 2024, mother picked up then nine-year-old A.M., took him home and then out to lunch. At the restaurant, mother placed her hands on his shoulders, and he told her not to touch him. This upset mother. A.M. then played with his iPad

2

and refused to order food. Mother told him they were going home, and A.M. talked back to her, causing her to raise her voice. On the car ride home, mother told A.M. that he was banned from watching shows on his iPad, and she tried to take the device from his hands. A.M., resting his legs on the center console, called mother a "crazy bitch." Mother slapped him on the outer shin three times, causing visible "petechiae (broken blood vessels)." A.M. demanded mother take him to the police because she hit him, and mother declined. Once they arrived home, A.M. ran to a neighbor's home and reported that mother had hit him.

On some prior occasion, mother had grabbed A.M.'s wrist and dragged him to the ground.

By August 2024, mother had moved to Florida to live near her family.

## 2. Procedural Background

On July 31, 2024, the Department of Children and Family Services (Department) filed a petition asking the court to exert jurisdiction under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b)(1) on the ground that mother "physically abused [A.M.] by repeatedly striking [his] leg," which was "excessive and caused [him] unreasonable pain and suffering," and which "endangers [his] physical health and safety and places [him] at risk of serious physical harm, damage, danger and physical abuse."

At the initial hearing on August 14, 2024, the juvenile court found a prima facie case, ordered A.M. detained from mother, and released him to father. The court also gave mother monitored

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

visits, to occur in Los Angeles if in person.  Mother had already moved to Florida at the time of this hearing.

On October 17, 2024, the juvenile court convened the jurisdictional and dispositional hearing, at which A.M.'s counsel urged the court to sustain the allegations but to change the language from "physical abuse" to "inappropriate physical discipline."  A.M's counsel argued that jurisdiction was appropriate because mother hit A.M. out of anger and in violation of a family court's order prohibiting corporal punishment, and she had grabbed his wrist and thrown him to the ground on a prior occasion.  Mother's counsel urged the court to dismiss both counts based on the lack of any problems reported before the parents separated and A.M.'s inability to recall details about mother's prior alleged physical discipline, all of which suggested that A.M. was being placed in the middle of a contentious divorce and pitted against mother by father.  Father's counsel urged the court to sustain both counts, citing mother's lack of remorse for inflicting physical discipline on A.M., her placing the blame on A.M. and father, characterizing both as narcissists, and A.M.'s reports of feeling unsafe with mother.

The juvenile court dismissed the count under subdivision (a) of section 300, but sustained the count under subdivision (b)(1), as amended to replace "physical abuse" with "inappropriate physical discipline."  It found a "real risk of continued inappropriate discipline" based on mother's view of "herself as a victim of not just the father but her own son," citing her statements that she was afraid of son as he got older and stronger and that "she has to be able to protect herself."  The court observed that "something [is] going on with mother," "whether there is a mental health problem or some other issue,"

4

where "mother sees herself as the victim and wants to blame the child." A.M. had expressed feeling unsafe around mother, which the court found credible. The court sustained the petition as amended, gave father sole physical custody, joint legal custody (with father to have tie-breaking authority), and monitored visits for mother. It then terminated jurisdiction.

## DISCUSSION

### 1. Pertinent law

Dependency jurisdiction is appropriate under section 300, subdivision (b)(1)(A) when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" due to a parent's "failure or inability . . . to adequately supervise or protect the child." A jurisdictional finding under this provision requires the Department to prove three elements: (1) the parent's neglectful conduct or failure or inability to adequately supervise or protect the child; (2) causation; and (3) serious physical harm or a substantial risk of serious physical harm. (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601 (*Cole L.*).)

A court does not need to wait until a child is seriously abused or injured to assume jurisdiction. (*In re S.F.* (2023) 91 Cal.App.5th 696, 712; *Cole L.*, *supra*, 70 Cal.App.5th at p. 602.) "A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' " (*Cole L.*, at p. 602.) But to show a defined risk of harm at the time of the hearing, "there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.' " (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.)

We review a finding of dependency jurisdiction for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's

5

findings—contains " ' "sufficient facts to support" ' " the court's jurisdictional findings.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

**2.    Insufficient evidence supports the juvenile court's exercise of jurisdiction over A.M.**

Because the family court's order in place specifically prohibited physical discipline, we agree with the juvenile court that mother's hitting A.M.'s leg was an "inappropriate" method to discipline him.  However, the record fails to show that this discipline caused "serious physical harm." (see § 300, subd. (a) ["serious physical harm" does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury])  Nor does it show a "substantial risk of serious physical harm" to A.M. at the time of the jurisdictional hearing.[2]  The record supports that on some prior occasion, mother grabbed A.M.'s wrist, hurting him, and dragged him to the ground.  A.M. has also reported feeling unsafe with mother.  Even with these additions, the record falls short of showing a substantial risk of serious physical harm.  The absence of such risk is highlighted by the fact that, at the time of the jurisdictional hearing, mother had already moved to Florida, and father had already been given full physical custody of A.M.[3]

In finding jurisdiction appropriate, the juvenile court expressed that it was not relying on just the leg-slapping and wrist-grabbing incidents.  Rather, its "concern [was] mother's

---

[2] At the hearing, the juvenile court referred to a "real risk of continued inappropriate discipline," but the relevant risk is that of *serious physical harm*.

[3] It is unclear from the record whether the family court had made any further orders regarding mother's visits with A.M.

view of her role as a mother." The court went on to describe the problematic way mother has spoken of A.M., describing him as a narcissist and expressing her concern that *she* needs to protect herself from *him*, which the court saw as evidence that "something [is] going on with mother," "whether . . . a mental health problem or some other issue." Mother's mental or emotional problems were not alleged as bases for jurisdiction in the petition, however, and the Department never asked the juvenile court to conform its petition to proof at the hearing.[4] The Department may not assert jurisdiction on a factual basis never alleged any more than a prosecutor can obtain a conviction for a crime never factually charged. Similarly, the juvenile court may not craft, assert, and adjudicate allegations against mother based on factual and legal theories not asserted in the dependency petition. (*In re G.B., supra*, 28 Cal.App.5th at pp. 488–489.)

Because any remaining custody and visitation issues should be resolved in the family court, we remand the case to that court for a hearing on custody and visitation. (*In re Roger S.*

---

[4] Whether the grant of such request would have comported with due process is an issue we do not address. (See *In re G.B.* (2018) 28 Cal.App.5th 475, 485–486 [a juvenile court "may amend the petition 'to correct or make more specific' the factual allegations" when the nature of the charge remains unchanged, but " '[i]f a variance between pleading and proof . . . is so wide that it would, in effect, violate due process to allow the amendment, the court should, of course, refuse any such amendment' "].) Nor do we opine on whether substantial evidence would have supported jurisdiction based on mother's mental or emotional issues. (See *In re A.G.* (2013) 220 Cal.App.4th 675, 684 (*A.G.*) [it is the Department's burden to show how children have been or will be harmed, and it may not be presumed from the mere fact of mental illness].)

(2018) 31 Cal.App.5th 572, 583; *A.G.*, *supra*, 220 Cal.App.4th at p. 686; *In re John. W.* (1996) 41 Cal.App.4th 961, 976 [remand to a different court is unusual but "necessarily inherent in section 362.4, which expressly contemplates future proceedings in the family courts"].)

## DISPOSITION

The juvenile court's jurisdictional finding is reversed, and the dispositional order is vacated.  This matter is remanded to the family court to address any remaining custody and visitation issues.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

RICHARDSON, J.

SIGGINS, J.*

---

<sup></sup>*        Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8